UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DOUGLAS ALAN TWOMEY,

Plaintiff,

v.

CAUSE NO.: 2:19-CV-225-TLS-JPK

CHIEF PETE LAND, in his official capacity,
OFFICER R. BALLAS, individually,
OFFICER J. BURKHOLDER, individually,
and OFFICER J. POLING, individually,

Defendants.

**OPINION AND ORDER**

This matter is before the Court on Defendants' Partial Motion to Dismiss [ECF No. 13],

which is fully briefed and ripe for ruling. For the reasons set forth below, the Court grants in part

and denies in part the motion.

**BACKGROUND**

Plaintiff Douglas Alan Twomey filed a six-count Complaint [ECF No. 1] against

Defendants Crown Point police officers R. Ballas, J. Burkholder, and J. Poling (collectively "the

Officers") in their individual capacities and Defendant Chief Pete Land in his official capacity as

Chief of Police of the Crown Point Police Department. The following factual allegations are

taken from the Complaint. On June 22, 2017, Plaintiff was at his residence located in Crown

Point, Indiana. Compl. ¶ 9, ECF No. 1. Around 5:45 p.m., the Officers arrived at Plaintiff's

residence to investigate a possible hit and run motor vehicle accident. *Id.* ¶ 10. The vehicle that

was involved in the hit and run earlier that day was not at Plaintiff's residence. *Id.* ¶ 11. The

Officers, while at Plaintiff's residence, assaulted Plaintiff, causing him physical injury, and then

arrested him for disorderly conduct under Cause Number 45H01-1706-CM-223. *Id.* ¶ 12. In their

attempt to arrest Plaintiff, the Officers grabbed Plaintiff's son out of his arms, kicked Plaintiff in

his knee three times in an attempt to wrestle his body to the ground, and twisted Plaintiff's back

and right arm. *Id.* ¶¶ 16.d, 38. In the attempt to arrest Plaintiff, the Officers grabbed, twisted,

exerted excessive pressure on, and otherwise manhandled Plaintiff's person and/or his body,

causing him injury. *Id.* ¶¶ 16.e, 38. They also used improper force to push Plaintiff into a police

car. *Id.* ¶ 38. Plaintiff sustained severe emotional distress as a result of these events. *Id.* ¶ 47. The

disorderly conduct charges filed against Plaintiff were dismissed on January 7, 2019. *Id.* ¶ 13.

Count I, titled "Violations of 42 U.S.C. § 1983: False Arrest; Excessive Force," alleges

that Plaintiff was arrested without probable cause, *id.* ¶ 16.c, the Officers used excessive force in

carrying out the arrest, *id.* ¶ 18, Plaintiff was deprived of his liberty without due process of law

as a result, *id.* ¶¶ 16.a, 18, Chief Land has a policy or custom of authorizing, approving, and/or

turning a blind eye to false arrests and excessive force by employees, *id.* ¶ 19, and, in the

alternative, the Officers false arrest was a result of their blatant disregard of Plaintiff's

constitutional rights, *id.* ¶ 20. Count II, titled "Violations of 42 U.S.C. § 1983: Detention and

Confinement," alleges that Plaintiff was unlawfully detained by the Officers based on the false

arrest, *id.* ¶¶ 22–24, Plaintiff was deprived of his liberty without due process of law based on the

unlawful detention, *id.* ¶ 26, and Chief Land has a policy or custom of detaining individuals in

jail without probable cause, *id.* ¶¶ 25–27. Count III brings a failure to train claim pursuant to

§ 1983, alleging that Chief Land failed to instruct, supervise, control, and/or discipline the

Officers in their duty to refrain from arresting individuals without probable cause and using

excessive force. *Id.* p. 7.

Counts IV, V, and VI are Indiana state law claims against the Officers individually for

battery, intentional infliction of emotional distress, and negligence, respectively. *Id.* pp. 8–12.

The Complaint alleges that the Officers were acting "in furtherance of their employment," *id.*

¶ 40, and, in the alternative, that their actions were "not done in furtherance of their employment," *id.* ¶ 41. Count IV also asserts the battery claim against Chief Land in his official capacity based on the theory of respondeat superior. *Id.* ¶ 40.

## LEGAL STANDARD

A motion to dismiss brought under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). The court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in favor of the plaintiff. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Surviving a Rule 12(b)(6) motion "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

In the instant motion, Defendants seek dismissal of the official capacity claims against Chief Land in Counts I, II, and III, dismissal of the Fourteenth Amendment due process claim in Counts I and II as to all Defendants, and dismissal of the state law claims in Counts IV, V, and VI as to all Defendants. The Court considers the arguments in turn.

### A.    Official Capacity Claims Against Chief Land

In Counts I, II, and III, Plaintiff brings claims against Chief Land in his official capacity pursuant to 42 U.S.C. § 1983 for the alleged violations of Plaintiff's constitutional rights by the

Officers. To state a claim under § 1983, "a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). A claim against an individual in his official capacity is "to be treated as a suit against the entity" in all but name. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). Thus, the claims against Chief Land in his official capacity are really claims against the City of Crown Point.

A municipality can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a claim of municipality liability under § 1983, a plaintiff must plead factual content that allows the court to draw the reasonable inference that "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690; *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). Here, Plaintiff is proceeding under the second option. On this motion, Chief Land does not contest the sufficiency of the allegations that the Officers violated Plaintiff's constitutional rights. Rather, Chief Land seeks dismissal of the *Monell* claims on the basis that the allegations of a widespread custom or policy are boilerplate and conclusory in nature.

In order to succeed on a de facto custom theory, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citing *Jackson v. Marion County*,

66 F.3d 151, 152 (7th Cir. 1995)); *see also Thomas*, 604 F.3d at 303–04. Thus, at the pleading stage, to allege a widespread policy or custom such that it constitutes a de facto policy with the force of law for *Monell* purposes, a plaintiff "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom" and that the occurrence was not an isolated incident. *See Gill*, 850 F.3d at 344 (citing *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011)).

   In *Gill*, the Seventh Circuit Court of Appeals found that the plaintiff had failed to state a claim of a widespread practice because he did not provide examples of other similar violations nor plausibly allege that they existed. *See Gill*, 850 F.3d at 344. The court held that, "[t]he specific actions of the detectives in Gill's case alone, without more, cannot sustain a *Monell* claim based on the theory of a *de facto* policy." *Id.* (citing *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003)). In contrast, in *White v. City of Chicago*, the Court of Appeals found that the plaintiff's allegations related to his individual incident were sufficient to state a claim of *Monell* liability for an allegedly unconstitutional policy related to search warrant applications. 829 F.3d 837, 840–41, 843–44 (7th Cir. 2016). However, in *White*, the plaintiff had also offered the police department's "standard printed form that does not require specific factual support for an application for an arrest warrant." *Id.* at 844. Thus, the plaintiff was not required to identify "even one other individual" who had been subjected to the same policy because the allegations of his personal incident together with the form were sufficient to allege municipal liability. *Id.*

   As to Counts I and II, Plaintiff's factual allegations, like those in *Gill*, are insufficient to support an inference that the alleged constitutional violations by the Officers were caused by a de facto policy or custom under *Monell*. Count I alleges that "the false arrest was a direct and proximate result of the Defendant Chief Pete Land's policy and/or custom of authorizing, approving, and/or turning a blind eye to its employee's practicing/participating in false arrests

and excessive force." Compl. ¶ 19. Count II alleges that Plaintiff's "detention and confinement was a direct and proximate result of the Defendant, Chief Pete Land's policy and/or custom of authorizing, approving, and/or turning a blind eye to its employee's[sic] practicing/engaging in false arrests, thereby causing impermissible detention and/or confinement." *Id.* ¶ 27. Plaintiff has not alleged any facts in support of these alleged policies other than his own arrest on June 22, 2017. Plaintiff has not provided any factual detail regarding Chief Land's alleged widespread policies and/or customs beyond formulaic conclusions. Nor has Plaintiff identified other evidence, such as the standard form offered in *White*, that would support an inference of a widespread practice. Considering the Complaint as a whole, there are no facts alleged that make it plausible that this was not an isolated event or that others may have suffered the same harm as Plaintiff. Thus, the Court grants the motion to dismiss the *Monell* claims in Counts I and II.

However, in Count III, Plaintiff alleges a widespread policy based on a failure to train that led to the alleged constitutional violations of excessive force and false arrest by the Officers. In his response brief, Plaintiff invokes *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989), in support of this claim. Pl. Mem. 8, ECF No. 17. Notably, Defendants' briefs do not address the legal standard for a *Monell* claim based on a failure to train. In limited circumstances, a municipality's failure to train its officers can rise to the level of a government policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). For municipal liability under § 1983, the "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [police] come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388); *see also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62

6

(quoting *Board of Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Deliberate

indifference can also be established based on a single incident that was a "highly predictable

consequence" of a failure to provide specific training. *Id.* at 63–64 (quoting *Bryan Cty.*, 520 U.S.

at 409; citing *City of Canton*, 489 U.S. at 390 n.10); *see also Woodward v. Corr. Med. Servs. of*

*Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) (quoting *Bryan Cty.*, 520 U.S. at 409).

Count III alleges that Chief Land "knowingly, recklessly, and/or with gross negligence

failed to instruct, supervise, control, and/or discipline on a continuing basis" the Officers in their

"duty to refrain from: a. Arresting individuals without probabl[e] cause. b. Using excessive

force." Compl. ¶ 31. Count III also alleges that Chief Land "had knowledge that the wrongs to be

done by his employees and throughout his Department were about to be committed," *id.* ¶ 32, or,

in the alternative, that, had Chief Land "diligently exercised his duty to instruct, supervise,

control and/or discipline Officers on a continuous basis, Chief Pete Land should have had, or

would have had knowledge that the wrongs to be done by his employees and throughout his

Department were about to be committed," *id.* ¶ 33. Although Plaintiff does not allege any

instances of a constitutional violation other than his own, Plaintiff does allege that Chief Land

knowingly failed to instruct Crown Point police officers on the constitutional limitations on the

use of force and the constitutional requirement of probable cause for an arrest. If the Officers

were not trained in these areas, the alleged constitutional violations of excessive force and arrest

without probable cause are a "highly predictable consequence" of such a failure to train. Given

the liberal pleading standards, Plaintiff's allegations are sufficient to state a *Monell* claim for

failure to train.

Therefore, the Court grants the motion as to the *Monell* claims in Counts I and II and

dismisses those claims without prejudice. The Court denies the motion as to Count III.

### B.        Fourteenth Amendment Due Process Claims

In Counts I and II, in addition to alleging § 1983 claims for excessive force, false arrest,

and false imprisonment in violation of the Fourth Amendment, Plaintiff also alleges a

deprivation of his liberty without due process of law in violation of the Fourteenth Amendment

based on the alleged arrest without probable cause. *See* Compl. ¶¶ 16(a), (b), 18, 26. Defendants

seek dismissal of the procedural due process claims based on the holding in *Guenther v.*

*Holmgreen* that, when state tort law provides a remedy for the matters that form the basis of a

Fourteenth Amendment claim for deprivation of liberty without due process of law, there is no

cognizable § 1983 procedural due process claim. 738 F.2d 879, 882 (7th Cir. 1984).

Here, Indiana state law makes available claims for false arrest, false imprisonment, and

battery for the Officers' actions. *See Wilson v. Isaacs*, 929 N.E.2d 200, 201–02 (Ind. 2010) ("We

hold that a law enforcement officer's use of force in excess of the reasonable force authorized by

statute is not shielded from liability under the 'enforcement of a law' immunity provided in

Indiana Code § 34-13-3-3(8) . . . ."); *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007)

(recognizing that governmental immunity for "enforcement of law" under Indiana Code § 34-13-

3-3(8) does not extend to the torts of false arrest and false imprisonment). Because Indiana state

law makes these tort claims available, Plaintiff cannot state a Fourteenth Amendment claim for a

deprivation of liberty without due process of law based on his arrest in this case. *See Guenther*,

738 F.2d at 882; *see also Foster v. Land*, No. 2:16-CV-45, 2016 WL 3971699, at *3 (N.D. Ind.

July 25, 2016) (dismissing Fourteenth Amendment procedural due process claims based on a

deprivation of liberty from a mistaken arrest because "Indiana provides all the process necessary

to challenge the false arrest"); *Burton v. City of Franklin*, No. 1:11-CV-267, 2011 WL 2938029,

at *8 (S.D. Ind. July 18, 2011) (dismissing Fourteenth Amendment procedural due process

claims because an adequate post-deprivation remedy was provided by the Indiana state law

causes of action of false imprisonment, false arrest, and malicious prosecution).

Thus, the Court grants the motion to dismiss the Fourteenth Amendment procedural due

process claims in Counts I and II and dismisses those claims without prejudice. This ruling does

not affect Plaintiff's remaining § 1983 claims in Counts I and II alleging excessive force, false

arrest, and false imprisonment in violation of the Fourth Amendment, which is applicable to the

states through the Fourteenth Amendment. *See Guenther*, 738 F.2d at 882–83 (citing *Baker v.*

*McCollen*, 443 U.S. 137 (1979), as illustrative of the distinction between a general Fourteenth

Amendment due process right claim and a substantive Fourth Amendment claim); *Foster*, 2016

WL 3971699, at *4.

**C.     State Law Claims in Counts IV, V, and VI**

In Counts IV, V, and VI, Plaintiff brings state law claims of battery, intentional infliction

of emotional distress, and negligence against the Officers individually and also brings the battery

claim against Chief Land in his official capacity based on a theory of respondeat superior.

Defendants seek dismissal of all the state law claims. As set forth below, the battery claim

against Chief Land in his official capacity on a theory of respondeat superior and the claims

against the Officers for their acts within the scope of employment are barred based on Plaintiff's

failure to comply with the notice requirements of the Indiana Tort Claims Act (ITCA). However,

Plaintiff has sufficiently pled in the alternative that the Officers were acting outside the scope of

their employment such that the state law claims may proceed against the Officers personally.

*1.     ITCA Notice*

Defendants move to dismiss the state law claims because Plaintiff failed to comply with

the notice requirements of the ITCA. The ITCA provides that tort claims against political

subdivisions and against governmental employees acting within the scope of their employment

are barred where the plaintiff fails to file a notice with the government body and the Indiana

political subdivision risk management commission within 180 days of the claimed loss. *See* Ind.

Code § 34-13-3-8(a); *Chang v. Purdue Univ.*, 985 N.E.2d 35, 51 (Ind. Ct. App. 2013). "Indiana

courts have consistently held that the failure to comply with the ITCA's notice requirements

requires dismissal." *Weaver v. Elkhart Cmty. Sch. Corp.*, 95 N.E.3d 97, 101 (Ind. Ct. App. 2018)

(citing *Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864, 870 (Ind. Ct. App. 1999)). The parties do

not dispute that Plaintiff has alleged the Officers were acting within the scope of employment.

*See* Compl. ¶ 40. In his response brief, Plaintiff concedes that he did not comply with the notice

requirements of the ITCA. Pl. Mem. 10.[1] Therefore, the Court grants the motion and dismisses

with prejudice the state law respondeat superior claim against Chief Land in his official capacity

and the state law claims against the Officers within the scope of employment.[2]

2.      *Claims Against Officers Personally Outside the Scope of Employment—§ 34-13-3-5(c)*

Defendants also move to dismiss the claims brought against the Officers personally based

on ITCA immunity.[3] The motion is denied because Plaintiff has alleged sufficient facts to state a

---

[1] "Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove and which the trial court must determine before trial. Once a defendant raises failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance." *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (granting motion to dismiss state law claims based on failure to provide ITCA notice) (internal citations and quotation marks omitted); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 644 (7th Cir. 2014) (affirming dismissal of state law tort claims based on failure to timely file tort claim notice).

[2] Because the claims based on acts within the scope of employment are barred, the Court does not reach Defendants' additional basis for dismissal under the law enforcement immunity provision of the ITCA for acts within the scope of employment. *See* Ind. Code § 34-13-3-3(8).

[3] The immunity provided by the ITCA is an affirmative defense that a complaint normally need not anticipate in order to survive a motion to dismiss. *See Moore v. Corizon Health Inc.*, No. 1:17-cv-987, 2018 WL 1522658, at *8 (S.D. Ind. Mar. 28, 2018) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). However, there is an exception when "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" such that dismissal is appropriate. *Id.* (quoting *Lewis*, 411 F.3d at 842).

claim in the alternative against the Officers personally under Indiana Code § 34-13-3-5(c) for

their acts outside the scope if employment.

The ITCA provides, in relevant part:

(b) . . . . A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally. . . .

(c) A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
      (1) criminal;
      (2) clearly outside the scope of the employee's employment;
      (3) malicious;
      (4) willful and wanton; or
      (5) calculated to benefit the employee personally.
. . . .

Ind. Code § 34-13-3-5(b), (c).

Thus, "[u]nder the [ITCA], there is no remedy against the individual employee so long as

he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636,

645 (7th Cir. 2014); *see Bushong v. Williamson*, 790 N.E.2d 467, 472–73 (Ind. 2003) (explaining

that, where a plaintiff alleges that an employee acted within the scope of employment, § 34-13-3-

5(b) "provides an immediate and early indication that the employee is not personally liable,"

even if the action is criminal). The requirements to state a claim against an employee personally

under § 34-13-3-5(c) apply only if the employee is alleged to have been acting outside the scope

of employment. *See Ball*, 760 F.3d at 644–45 (declining to consider the sufficiency of the

allegations under § 34-13-3-5(c) and finding that the state law claims against the individual

officer were properly dismissed because the complaint alleged that the officer was acting

pursuant to his position as a detective, cloaking him with immunity under § 34-13-3-5(b));

11

*Bushong*, 790 N.E.2d at 471, 472–73;[4] *see also Ashcraft v. City of Crown Point, Ind.*, No. 2:13-

CV-080, 2013 WL 5934612, at *7 (N.D. Ind. Nov. 5, 2013) (citing *Bushong*, 790 N.E.2d at

471)); *Young v. Davis*, 40 N.E.3d 1254, 1256–57 (Ind. Ct. App. 2015); *City of Gary v. Conat*,

810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004) (citing *Bushong*, 790 N.E.2d at 471)).

 "To be within the scope of employment, conduct must be of the same general nature as

that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*,

727 N.E.2d 450, 453 (Ind. 2000) (citing Restatement (Second) Agency § 229 (1958)). "[T]o be

incidental, however, [an act] must be one which is subordinate to or pertinent to an act which the

servant is employed to perform." *Id.* (citing Restatement (Second) Agency § 229 cmt. b). Even

tortious, malicious, or criminal acts may fall within the scope of employment. *See Burton v.*

*Benner*, 140 N.E.3d 848, 853 (Ind. 2020); *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 461

(Ind. 2018); *Bushong*, 790 N.E.2d at 472–73; *Celebration Fireworks*, 727 N.E.2d at 453 (citing

*Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993)); *Ball v. Jones*, 52 N.E.3d 813, 820 (Ind.

Ct. App. 2016) (citing *Kemezy*, 622 N.E.2d at 1298).

 Whether an employee's actions are within the scope of employment is generally a

question for the factfinder. *See Bushong*, 790 N.E.2d at 473 (recognizing that "whether the

tortious act of an employee is within the scope of employment is a question of fact" but also that

"under certain circumstances the question may be determined as a matter of law" and affirming

---

[4] The Indiana Supreme Court in *Bushong* explained:
> It is correct to say that a government employee may be sued personally where the
> complaint alleges the act or omission causing the loss is criminal. *See* I.C. § 34-13-3-
> 5(c)(1). However the fact of criminal conduct standing alone is not dispositive of whether
> the employee was acting outside the scope of employment. . . . Even criminal acts may be
> considered as being within the scope of employment if "the criminal acts originated in
> activities so closely associated with the employment relationship as to fall within its
> scope."

790 N.E.2d at 472–73 (quoting *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d
244, 247 (Ind. 1989)).

summary judgment in favor of the officer based on the evidence of record conclusively

demonstrating that the officer was acting in the scope of employment as a matter of law); *see*

*also Cox*, 107 N.E.3d at 460.

Plaintiff has sufficiently alleged in the alternative that the Officers were acting outside

the scope of employment. The Complaint alleges that the "battery upon the Plaintiff was *not*

done in furtherance of [the Officers'] employment, as such furtherance was extinguished when

the Defendant arrested and detained the Plaintiff without probable cause to do such." Compl. ¶

41 (emphasis added). The Complaint alleges that the vehicle involved in the hit and run being

investigated by the Officers was not at Plaintiff's residence. *Id.* ¶¶ 11, 41. And, in his response

brief, Plaintiff argues that the Officers knew that Plaintiff was not involved in the accident that

they were investigating yet they proceeded to "assault, batter, injure and arrest the Plaintiff on

fictitious charges." Pl. Mem. 10. Defendants do not respond to this argument. While an arrest

without probable cause could certainly occur within the scope of employment, the Court finds, at

this pleading stage, that Plaintiff has sufficiently alleged facts in the alternative that the Officers

were acting outside the scope of employment. *Cf. Ball*, 52 N.E.3d at 820–21 (holding, on appeal

of a summary judgment ruling, that a police officer's action of falsifying a probable cause

affidavit "was incidental to the conduct authorized" by his employer and "to an appreciable

extent to further his employer's business" such that the officer was within the scope of

employment and cloaked with immunity).

Additionally, Plaintiff's alleged facts are sufficient to state a claim against the Officers

personally under § 34-13-3-5(c).[5] In his brief, Plaintiff argues that he has alleged conduct that

---

[5] Section 34-13-3-5(c) provides that "[t]he complaint must contain a reasonable factual basis supporting
the allegations." Ind. Code § 34-13-3-5(c). However, the Seventh Circuit Court of Appeals has suggested
that a complaint brought under § 34-13-3-5(c) in federal court need only comply with the notice pleading
standard under Federal Rule of Civil Procedure 8(a). *Ball*, 760 F.3d at 644–45.

"clearly occurred outside the scope of their employ" (§ 34-13-3-5(c)(2)), was "malicious" (§ 34-13-3-5(c)(3)), and/or was "willful and wanton" (§ 34-13-3-5(c)(4)). Pl. Mem. 9. As set forth above, Plaintiff has sufficiently alleged in the alternative that the Officers acted outside the scope of employment, which is usually a question of fact for the jury or resolved on summary judgment once the facts are developed. A "malicious act" is defined as "an intentional, wrongful act performed against another without legal justification or excuse." *Higgason v. State*, 789 N.E.2d 22, 29 n.5 (Ind. Ct. App. 2003) (quoting Black's Law Dictionary 969 (7th ed. 1999)). "Willful or wanton" misconduct is defined as "an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time." *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204–05 (Ind. Ct. App. 2011) (quoting *U.S. Auto Club, Inc. v. Smith*, 717 N.E.2d 919, 924 (Ind. Ct. App. 1999)). Although Defendants argue generally that Plaintiff has not alleged facts to show malicious and/or willful and wanton conduct, Defendants offer no legal standard for either nor an anlaysis of the facts in the Complaint. Defendants do not respond to Plaintiff's argument that the Officers' conduct was malicious and/or willful or wanton once the Officers allegedly knew that they did not have probable cause but nevertheless grabbed Plaintiff's son from his arms, kicked Plaintiff in the knee three times, wrestled him to the ground, twisted his back and arm, and arrested him. *See* Compl. ¶¶ 16.d, 16.e, 38. The Court finds that, based on the liberal pleading standards, Plaintiff has alleged sufficient facts to state a claim against the Officers personally under § 34-13-3-5(c).

## CONCLUSION

Based upon the foregoing, the Court GRANTS in part and DENIES in part Defendants' Partial Motion to Dismiss [ECF No. 13].

The Court (1) DISMISSES without prejudice Counts I and II against Defendant Chief Pete Land in his official capacity; (2) DISMISSES without prejudice the Fourteenth Amendment

procedural due process claims brought in Counts I and II as to all Defendants; and

(3) DISMISSES with prejudice the respondeat superior claim in Count IV against Defendant

Chief Pete Land in his official capacity and the claims in Counts IV, V, and VI against the

Officers within the scope of employment. The following claims REMAIN PENDING:

(1) Counts I and II on the § 1983 Fourth Amendment claims of excessive force, false arrest, and

unlawful detention and confinement against Defendant Officers Ballas, Burkholder, and Poling;

(2) Count III, which is the *Monell* claim for failure to train against Defendant Chief Pete Land in

his official capacity; and (3) Counts IV, V, and VI against Defendant Officers Ballas,

Burkholder, and Poling on the alternative allegation that they were acting outside the scope of

employment and, thus, can be sued personally under Indiana Code § 34-13-3-5(c).

SO ORDERED on October 13, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT